(No. 24271.

THE PEOPLE *ex rel.* Charles E. Dooley, County Collector, Appellee, *vs.* THE NEW YORK, CHICAGO AND ST. LOUIS RAILROAD COMPANY, Appellant.

*Opinion filed April 20, 1938—Rehearing denied June 8, 1938.*

BRACKEN, RADLIFF, LIVINGSTON & MURPHY, and POPE & DRIEMEYER, (W. J. STEVENSON, of counsel,) for appellant.

BERNARD WALL, State's Attorney, and ARLO E. BANE, (BARRY & BARRY, of counsel,) for appellee.

OTTO KERNER, Attorney General, (WILLIAM G. WORTHEY, of counsel,) *amicus curiæ.*

Mr. Justice Stone delivered the opinion of the court:

Appellant, the New York, Chicago and St. Louis Railroad Company, seeks review of a judgment for taxes obtained by the county treasurer and *ex officio* collector of McLean county. It objects to all of the county tax, part of the town tax of the towns of Cheney's Grove, Dawson and Bloomington, and part of the school tax of school district No. 87, as such taxes were levied for the year 1935.

The county tax, including the tax for general county purposes, county highway tax, tuberculosis sanitarium tax, blind relief fund tax, mothers' pension fund tax and pauper relief fund tax, was extended at a rate of seventy-five cents on each $100 assessed valuation. Appellant contends that the entire county tax is illegal and void because the board of supervisors of McLean county did not levy said tax at their September session, as required by the statute. (Smith-Hurd Stat. 1935, chap. 120, par. 109.) The annual meeting of the board of supervisors was held on September 10, 1935, the second Tuesday of the month, pursuant to statute, (Smith-Hurd Stat. 1935, chap. 34, par. 50,) and adjourned from day to day until September 12, 1935, upon which day it adjourned "subject to the call of the chairman" without having levied the county tax. On November 26, 1935, the board assembled, pursuant to the call of the chairman, for the purpose of levying said tax. Notice of the meeting was printed in a newspaper published in the county and the county clerk mailed a copy of the notice to each of the members of the board.

Appellant maintains that the adjournment of the board on September 12 "subject to the call of the chairman" terminated the September session as effectually as, and was, in effect, a *sine die* adjournment, and that, therefore, the county tax was not levied at the September session as the statute prescribes.

This court has held in a number of cases that county boards can exercise only such powers as are expressly given

them by statute, or such as arise by necessary implication from the powers granted, or are indispensable to carry into effect the object and purpose of their creation. It is pointed out in those cases that a difference exists between a meeting of the members of the board and a meeting of the board. It is a board of supervisors only when convened in session, either regular or special. To authorize a special meeting of the board of supervisors the statute requires that such meeting shall be requested by at least one-third of the members of the board and notice thereof published by the clerk in some newspaper printed in the county. (Smith-Hurd Stat. 1935, chap. 34, par. 51.) These requirements are prescribed by statute and cannot be dispensed with by an attempt to delegate authority to the chairman of the board to call meetings whenever he may choose. The chairman of the board is merely the presiding officer and otherwise has no powers superior to those of any other member of the board. (*People* v. *Millard,* 307 Ill. 556; *Marsh* v. *People,* 226 id. 464.) Since the chairman of the board of supervisors had no authority to call a special meeting of the board, the adjournment of the board on September 12 "subject to the call of the chairman" terminated the September session as effectively as by a *sine die* adjournment. The tax levy passed at the meeting of the members of the board on November 26 was illegal and void.

Appellant argues that the duty upon the board to levy a county tax is mandatory and upon failure to make a tax levy it might be compelled by *mandamus* to reassemble and make such levy, and this being so, the board had power to reconvene its September session of its own accord on November 26 and make said levy then. This court has held that a board of supervisors cannot, by adjourning its meeting, place itself beyond the coercive power of the courts to compel performance of a duty enjoined by law but may be compelled by *mandamus* to reassemble and perform that duty. (*Board of Supervisors* v. *People,* 226 Ill. 576.) But

the fact that the board may be compelled to perform its legal duty does not mean that it has power and authority to perform that duty at any time or in any manner it chooses, and ignore the limitations made upon its authority, and the specifications, by statute set out, as to the time and manner of calling its meetings and the duties to be performed thereat.

Counsel also argue that in this case there was no special meeting of the board, but a reconvening only of the regular September session. Since the adjournment here ordered was *sine die,* no other meeting before the next regular meeting specified in the statute could be held except a special meeting, called as directed by statute.

Appellant objected to the county tax on the further ground that taxes for blind pension fund purposes and pauper relief purposes were levied at rates in addition to the maximum rate of twenty-five cents on each $100 assessed valuation for general county purposes, and so are illegal, for the reason that no statute authorizes the extension of said taxes at rates in addition to said maximum rate. As we hold that the county tax is illegal, for the reason stated, it is unnecessary to discuss this contention at length. It may be observed, however, that this question was settled in *People* v. *Baltimore and Ohio Southwestern Railroad Co.* 366 Ill. 318, which held that taxes levied for pauper relief purposes and blind pension fund purposes for the year 1935, must be included in the twenty-five-cent rate for general county purposes.

As to the town taxes of Cheney's Grove, Dawson and Bloomington, the record shows that certificates of the levy of town taxes made by the electors of those townships, at the annual town meetings held on the first Tuesday in April, 1935, were filed with the town clerks of the respective towns pursuant to the statute then in force and prior to July 1, 1935. The burden of supporting paupers in counties under township organization then rested on the towns and the said levies included taxes for pauper relief.

July 19, 1935, a statute became effective which transferred this burden to the county. (Smith-Hurd Stat. 1935, chap. 107, sec. 14.) To avoid duplication, the legislature amended section 122 of the Revenue act (Smith-Hurd Stat. 1935, chap. 120, par. 110) and section 4 of article 12 of the Township Organization act. (Smith-Hurd Stat. 1935, chap. 139, par. 114.) The amendment to the Revenue act provided that the clerk of any town in which the electors, at a town meeting held during 1935, had made a tax levy to provide for the support of poor persons, shall certify only the amount of taxes required to be raised to satisfy any unpaid obligation incurred for such purpose prior to July 1, 1935, in cases where no other funds were available for the payment thereof, and to retire the principal and interest of any warrants drawn against and in anticipation of the tax for such purpose prior to July 1, 1935, and the county clerk shall extend only such amount of such tax. No such certificate was filed by any of the town clerks of these townships stating the amount of taxes necessary to be raised to satisfy unpaid obligations incurred for pauper relief prior to July 1, 1935. The county clerk extended the town taxes in each of these towns at a rate sufficient to produce the whole amount levied for pauper relief at the town meeting of each town.

Appellant argues that the filing of the certificate by the town clerk reciting the amount necessary to be raised to pay obligations already incurred or anticipation warrants issued prior to July 1, was essential to the extension of any tax for pauper relief, and that the failure to file such certificate was not a mere omission not affecting the substantial justice of the tax.

It is a rule of law long followed by this court, that the certificate of levy of the tax is jurisdictional, and that upon the failure of the town clerk to file a certified copy of the levy, the county clerk has no authority or jurisdiction to extend the tax, (*People* v. *Chicago and Northwestern Rail-*

*way Co.* 312 Ill. 58, 62; *People* v. *Chicago and Eastern Illinois Railway Co.* 315 id. 424; *Village of Russellville* v. *Purdy,* 206 id. 142; *People* v. *Cincinnati, Indianapolis and Western Railway Co.* 253 id. 420;) and that even the filing of the original tax levy ordinance is not sufficient compliance with the statute to authorize the extending of the tax. True, at the time the original certificates of levy were filed following the April meetings, the procedure prescribed by statute was properly followed and the levy was valid. Subsequently the legislature, when it relieved the townships from the duty of providing for paupers, required that a new certificate be filed. The filing of this new certificate was mandatory and without such a certificate so filed the county clerk had no authority to extend any taxes for pauper relief. Had the legislature only changed the rate at which property could be assessed for pauper relief, then cases cited by appellee would be in point, and the rule that the validity of the tax and the rate authorized are to be determined as of the time the levy is made, (*People* v. *Cook,* 336 Ill. 330; *People* v. *Wabash Railway Co.* 344 id. 606;) would be applicable. But in the above cases no new certificate of levy was required to be filed and there was no attempt on the part of the legislature to affect valid levies already made. The evident and salutary purpose of the legislature in requiring that the town clerk certify the amount which the town has already expended or become obligated to expend for this purpose, was to prevent double taxation for one purpose. The county clerk had no authority to extend the town levies for pauper relief and the tax is void.

The argument is made that, as construed, the act is unconstitutional as violating the obligation of contract. Since the act plainly provides that a town tax covering in full the contract obligations of the town shall be extended on filing by the town clerk of a certificate of the amount necessary for that purpose, the argument presented must

be held unsound. The fact that the town clerk fails to carry out his obligation under the amended statute, does not render that statute invalid.

As to the school tax of district No. 87: This tax was extended at the rate of $1.72½, which comprised a rate of $1.35 for educational purposes, seven cents for bonds issued for educational purposes and thirty and one-half cents for building purposes and building bonds. The maximum rate which could have been extended for educational purposes under the statute and the vote of the people taken, was $1.35. No vote was taken to increase the statutory levy for building purposes. The rate for such purposes is limited by statute to thirty-seven and one-half cents on each $100 valuation. The county clerk extended a total rate for buildings and maintenance and building bonds of thirty and one-half cents. Appellant contends that the rate of thirty and one-half cents extended for building purposes and building bonds was sufficient to produce the amount levied for building purposes and for the payment of principal and interest of all the bonds issued, including building purpose bonds and those for educational purposes, and that the seven cents assessed for bonds for educational purposes is void, because it is in excess of the maximum rate of $1.35 for educational purposes. It is argued that the statute under which such bonds were issued did not authorize the extension of taxes for their payment in excess of the maximum rate for educational purposes fixed by law or vote.

This school district, existing by virtue of a special charter, was authorized by statute, in 1932, (Smith-Hurd Stat. 1935, chap. 122, par. 327.5,) and by a vote of the people pursuant thereto, to issue bonds for educational purposes. This statute provides: "To meet the payments of principal and interest on such bonds as the same shall become due, taxes shall be levied in such school district by the same corporate authorities and in the same manner as other taxes are levied in such school district for educational purposes.

Such taxes shall be in addition to any and all other taxes, both building and educational, which such corporate authorities are now or may hereafter be authorized to levy in such district, and shall not be included in any aggregate of the tax rates under the provisions of 'An act concerning the levy and extension of taxes,' approved May 9, 1901, as amended, and shall not be reduced by the county clerk in the extension of the same." Section 189 of the Schools act of 1909, (Smith-Hurd Stat. 1933, chap. 122, par. 212,) at the time of the passage of the above statute concerning bonds, prescribed a maximum rate of one per cent for educational purposes and three-eighths of one per cent for building purposes, with the proviso that, by a resolution submitted to the voters, the maximum rate might be increased up to but not more than one and one-half per cent for educational purposes and as high as but not more than one-half of one per cent for building purposes; and where such resolution has been presented to the voters the directors or board of education shall not levy a tax in excess of the rate mentioned in said proposition. As we have seen, the voters of the district approved a rate of $1.35.

An act approved May 15, 1934, (Laws of 1933-4, p. 259,) added paragraph "C" to section 189. This paragraph provided: "When the county clerk determines the amount of taxes to be extended upon all of the taxable property in any school district having a population of less than 200,000 inhabitants he shall determine from the certified copies of bond resolutions filed in his office the amount necessary to pay the maturing principal of and interest on any bonds of such district and shall extend taxes in amounts sufficient to pay all principal and interest thereon which matures prior to the delinquent date of taxes to be realized from the next succeeding tax extension. If the sum of the amount levied and certified by the proper authorities of any such district for building purposes and the amount necessary to pay the maturing principal of and interest on any such bonds ex-

ceeds the maximum rate for building purposes which such district may levy under the provisions of paragraph "A" of this section, then the county clerk shall deduct the amount necessary to pay such principal and interest from the maximum amount which such district may levy for building purposes under such paragraph "A," (without referendum, or in case a referendum has been had the amount authorized by such referendum) and shall extend for building purposes only the amount remaining after making such deduction." This paragraph makes no provision for reducing the levy for educational purposes.

The county clerk found the rate necessary to pay the maturing principal and interest on educational bonds to be seven cents on the $100 valuation. Of the maximum rate of thirty-seven and one-half cents for building purposes, he extended thirty and one-half cents.

Appellant's counsel argue that the taxes for educational bonds and interest must be included within the maximum rate permitted for educational purposes. They cite cases in which this court held that language of acts declaring that the tax authorized shall be in addition to other taxes of such municipality, does not justify the conclusion that the legislature intended to authorize an increase in the maximum rate allowed. In this case by paragraph 327.5 of the School law, under which this district was operating, and which section authorized bonds for educational purposes, it is definitely provided that taxes to pay such bonds and interest "shall not be included in any aggregate of the tax rates" authorized. This is specific language authorizing such tax outside the maximum rate for educational purposes. The language of the act before us is not unlike that appearing in the acts considered in *People* v. *Devine Realty Trust,* 366 Ill. 418, and *People* v. *Millard, supra,* which were held to authorize a tax in excess of the rate for county purposes.

During July, 1935, section 189 of the School law was amended three times. (Smith-Hurd Stat. 1935, chap. 122, par. 212.) Senate Bill No. 64, approved July 11, 1935, repealed paragraph "B" of said section by omitting it. House Bill No. 328, in force July 12, was the last of the three to become effective. It made no change in paragraphs "B" or "C" but affected only paragraph "A" by extending the date, prior to which a referendum might be held, from July 1, 1934, to July 1, 1937. House Bill No. 616, approved on July 11, contained an amendment to paragraph "A," omitted paragraph "B," and amended paragraph "C" and designated it as "B." Considerable argument is indulged in the briefs on the question whether these amendments are consistent so that all may stand together, or whether the last in point of time to be approved, only is to obtain. So far as this case is concerned that issue is of no consequence since a reading of all three of these amendments shows no intention of the legislature that the levies for interest and principal on bonded indebtedness shall be within the maximum limit authorized for educational purposes. Since paragraph 327.5 is applicable to district No. 87 and authorized educational bonds and interest taxes in addition to the maximum rate for educational purposes, and since section 189, neither before nor after the amendments of 1935 has declared otherwise, the taxes for district No. 87 were legal.

The judgment of the county court, overruling defendant's objections to the school taxes for school district No. 87, is affirmed. In other respects the judgment is reversed and the cause is remanded to the county court of McLean county, with directions to enter a judgment sustaining defendant's objections to the county and town taxes.

*Affirmed in part, reversed in part,*
*and remanded, with directions.*